IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ADEBOWALE OJO,** <br><br> **Defendant.** | **CRIMINAL NO. GJH-21-28** |

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR REVIEW OF DETENTION ORDER**

On March 8, 2021, as supplemented by a memorandum on March 16, 2021, the Defendant filed the instant motion—a Motion for Review of Detention Order—seeking release from pretrial detention. On December 14, 2020, the Defendant was charged by complaint with distribution of controlled substances, in violation of 21 U.S.C. § 841. On February 19, 2021, the grand jury returned an indictment charging the Defendant with one count of distribution of and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Following a detention hearing, on February 24, 2021, Magistrate Judge Day found by clear and convincing evidence that, were the Defendant released, no condition or combination of conditions of release would reasonably assure the safety of others and the community, and Judge Day ordered the Defendant detained pending trial. ECF No. 15.

The pending motion for review of the detention order should be denied. First, a fair consideration of the factors relevant to the detention analysis, as set forth in 18 U.S.C. § 3142(g), leads to the conclusion that there is no condition or combination of conditions of release that would reasonably assure the safety of the community or the Defendant's appearance as required if the Defendant were to be released. Indeed, the Defendant cannot rebut the statutory presumption that

1

there are no conditions of release that would reasonably assure the safety of the community or his appearance.

Second, although the detention facility where the Defendant is currently housed has experienced a COVID-19 outbreak, measures in place at the facility are reasonably designed to curtail the spread of the virus, and the situation appears to have improved substantially since the outbreak began in January 2021.

## BACKGROUND

### I. Procedural Background

On December 14, 2020, U.S. Magistrate Judge Charles B. Day issued a criminal complaint charging the defendant with possession with intent to distribute and distribution of controlled substances. ECF No. 1. As set forth in the affidavit in support of the complaint, the charges arose from a controlled purchase of cocaine and heroin from the Defendant conducted by a confidential source at the direction of law enforcement. *See* ECF No. 1-1.

In January 2021, the Defendant, who was in immigration custody, had his initial appearance in the Western District of Louisiana and consented to detention for purposes of transfer to this District. ECF No. 3. On January 29, 2021, the Defendant had his initial appearance in the District of Maryland. ECF No. 6. The court ordered the Defendant temporarily detained, pending a detention hearing, ECF No. 9, to permit defense counsel sufficient time to research the Defendant's immigration status and prepare for a detention hearing.

On February 19, 2021, a grand jury returned an indictment charging the Defendant with distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841. ECF No. 12. A detention hearing was held before Magistrate Judge Day on February 24, 2021, after which the Court ordered the Defendant detained pending trial. ECF No. 15. Judge

Day found, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. *Id.*

On March 8, 2021, the Defendant filed the pending motion for review of the detention order, ECF No. 17, which he supplemented with a further supporting memorandum on March 16, 2021, ECF No. 23. In addition to arguing that he may be released on conditions of home confinement, the Defendant cites the danger posed by COVID-19, particularly in light of the outbreak at CDF, and requests temporary release under 18 U.S.C. § 3142(i). For the reasons stated below, the Motion should be denied.

## II. The COVID-19 Outbreak at CDF[1]

CDF experienced an outbreak of COVID-19 cases beginning in January 2021. In response, an epidemiologist from the Maryland Department of Health began working with the Maryland Department of Public Safety and Correctional Services ("DPSCS") as DPSCS's direct point of contact and outbreak coordinator. Based on recommendations from the epidemiologist, large-scale COVID-19 testing has been implemented at CDF since the emergence of the outbreak. All staff and vendors entering CDF are required to be COVID tested once a week, except for those who have tested positive in the last 90 days, and all detainees will be tested once a week, except for those who have tested positive in the last 90 days. Weekly testing will continue until no new cases have been identified over a 14-day period. And the Government is aware that the facility has conducted periodic mass testing, including on March 15, 2021.

---

[1] Information provided here regarding the COVID-19 outbreak and the procedures at CDF is based on information provided to the U.S. Attorney's Office by officials at CDF, the Maryland Department of Public Safety and Correction Services, and the U.S. Marshals Service. The Government has endeavored to provide the most current information available to it.

CDF has an on-site medical unit with medical professionals who are able to provide ongoing observation and treatment to detainees. Staffing at CDF's medical unit includes two medical doctors, one nurse practitioner, nine registered nurses, four licensed practical nurses, one medical records clerk, and one phlebotomist. Detainees who test positive for COVID-19 are monitored two-to-three times per day for symptoms, including temperature and pulse oxygen level screening. If a detainee is exhibiting signs of deteriorating health, he may be transferred to an outside medical facility. Certain detainees have been transferred to outside facilities, including local hospitals, for treatment as a result of COVID-19 infection.

These measures appear to have been successful in drastically reducing the number of COVID-positive detainees within the facility from the height of the outbreak in January and early February 2021. While there have been more than two hundred cumulative COVID positives who have since recovered, the Government has been informed that, as of March 19, 2021, there are three COVID-positive detainees in the facility.[2]

## ARGUMENT

A consideration of the 18 U.S.C. § 3142(g) factors weighs in favor of pre-trial detention in this case. The nature and circumstances of this case, as well as the Defendant's history, merit his detention to assure the safety of the community and his appearance. Moreover, considering all of the relevant information, the Court should conclude that the health risks posed to the Defendant by his continued detention at CDF do not outweigh the danger that he would pose to the community if released pending his trial. The Court should therefore deny the motion for review of the detention order and the Defendant's request for release.

---

[2] This reflects the most recent numbers available to the Government.

**I.     Legal Standards**

The Defendant seeks review of the magistrate judge's detention order under 18 U.S.C. § 3145(b). In considering such an appeal, the District Court reviews the magistrate judge's detention order de novo. *United States v. Stewart*, 19 Fed. App'x 46, 47 (4th Cir. 2001).

Under 18 U.S.C. § 3142(e), a defendant shall be ordered detained pending trial if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is required if the Court finds that either the defendant poses a risk of flight or a danger to the community (or both). *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citations omitted) ("The lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required.").[3]

Further, where, as in this case, there is probable cause to believe that a defendant has committed an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). The rebuttable presumption in § 3142(e) shifts to the defendant the burden of producing evidence that he is not a flight risk and not a danger to the community. *See United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).

"In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," a

---

[3] The Government may properly proceed by proffer at a detention hearing. *See United States v. White*, No. CRIM. PWG-13-0436, 2015 WL 2374229, at *2 (D. Md. May 15, 2015) ("[N]umerous federal circuits have held that evidence proffers by the Government may be adequate for a detention order, and that has been the consistent practice in this Court for many years." (citing cases)).

court is required by law to consider the factors set forth in 18 U.S.C. § 3142(g), which are "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . a controlled substance [or] firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

As Judge Gallagher has explained, a defendant's medical condition, and the related risks posed to the defendant by incarceration, do not "fall within the factors appropriately considered in the context of § 3142(g)" unless they have some effect on "the defendant's risk of flight or danger to the community." *United States v. Gallagher*, SAG-19-479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) (collecting cases).

However, "the COVID-19 pandemic is relevant in the assessment of whether a defendant's temporary release might be appropriate under § 3142(i), and will be considered fully in that context, in accordance with the Fourth Circuit's order in *United States v. Gary Creek* . . . ." *Id.* at *4. In *Creek*, the Fourth Circuit explained that § 3142(i) requires considering "the severity of the risk that the COVID-19 virus poses to the Defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform factors, rises to the level of a 'compelling reason' for temporary release." *United States v. Creek*, CCB-19-36, App. No. 20-4251, ECF 18 at *1 (4th Cir. Apr. 15, 2020). "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, 457 F. Supp. 3d 469, 472 (D. Md. 2020).

## II. The § 3142(g) Factors Continue to Weigh Heavily in Favor of Detention

Based on the factors set forth in 18 U.S.C. § 3142, the Defendant would pose a danger to the community and a risk of nonappearance if released. The Defendant cannot overcome the presumption in favor of detention in this case, and the COVID-19 outbreak does not undermine the necessity of the Defendant's detention. Accordingly, the detention order should remain in place.

The Defendant has been charged with distribution of and possession with intent to distribute controlled substances, namely, cocaine and heroin. As detailed in the affidavit in support of the criminal complaint, ECF No. 1-1, there is substantial evidence in support of this charge. The charge arises from a controlled purchase conducted by a confidential source at the direction of law enforcement. *Id.* ¶ 7. As described in the affidavit, the purchase was arranged through a series of recorded telephone calls in which the Defendant discussed both the type and quantities of narcotics to be purchased. *Id.* ¶ 8. Using common drug terminology—referring to crack cocaine as "hard" and heroin as "boy"—the Defendant agreed to sell a "seven" grams (or a "Vick") of crack cocaine and "two" grams of heroin to the source. *Id.*

Law enforcement searched the source for drugs and currency before and after the transaction and maintained surveillance during the transaction. *Id.* ¶¶ 11, 15. The source first met with the Defendant in a restaurant to pay him, before obtaining the drugs from another individual in the vehicle in which the Defendant had arrived. *Id.* ¶¶ 12-15. In a recorded conversation with this individual, the source told the individual that he was grabbing a "Vick of the hard and then two of the boy"—the type and quantities of narcotics that the source had arranged to purchase from the Defendant on the recorded calls—and confirmed that he had paid the Defendant. *Id.* ¶ 14. Ultimately, the source purchased from the Defendant—and turned over to law enforcement—5.82 grams of a substance containing cocaine and 2.16 grams of a substance containing heroin. *Id.* ¶ 16.

Thus, the Defendant's offense involves controlled substances, and the weight of the evidence supporting the charge is substantial.

Moreover, the circumstances of the offense demonstrate that this was not an isolated event, and the Defendant was engaged in a broader narcotics trafficking scheme. As reflected in the affidavit in support of the criminal complaint, ECF No. 7, the source conducted several controlled purchases of controlled substances from the Defendant between January and March 2018. During these controlled purchases, the Defendant sold substances containing cocaine, cocaine base, heroin, and fentanyl. In total, the Defendant sold more than 28 grams of cocaine base and more than 6 grams of heroin during controlled purchases.

Furthermore, the Defendant has a history of drug distribution offenses. In 2009, in Frederick County, Maryland, the Defendant was found guilty of manufacturing/distribute narcotics (heroin). A violation of probation warrant issued and was served in that case, and the Defendant's probation ultimately terminated unsatisfactorily in September 2012. Also in 2012, the Defendant was found guilty in the Circuit Court for Montgomery County, Maryland, of possession with intent to distribute a controlled dangerous substance and sentenced to twelve years confinement, with 5 years suspended. The Defendant's probation in that case again closed unsatisfactorily in January 2018. In addition, according to the pretrial services report, the Defendant has had multiple additional arrests, three of which involve possession with intent to distribute, manufacture, or deliver controlled substances. And the Defendant has two prior failures to appear, one of which was as recent as 2019.

While the Defendant's past crimes are not violent, they involved the distribution of controlled substances that pose a danger to the public. The Defendant's criminal history, as well as his history on court supervision, therefore indicate that, if released, he is likely once again to resume trafficking in drugs. The Defendant claims that he may be released on strict home-

confinement conditions. But the Defendant's history demonstrates that he is unlikely to comply with conditions of release.

Moreover, the Defendant has an outstanding immigration detainer as he is a Nigerian citizen and subject to a final order of removal. It is unlikely that, if released, he would be able to reside with his proposed third-party custodian, as he would be transferred back into immigration custody. Assuming that the Defendant could secure release from immigration detention, the order of removal in immigration proceedings as well as these pending criminal proceedings create an even greater incentive to flee than if he were only facing criminal prosecution. As indicated in the Defendant's motion, he has lived in the United States since childhood and wishes to remain in this country, providing a strong incentive to fail to appear in order to avoid both criminal and immigration authorities. His immigration status, his history of failures to appear, and past poor performance on court supervision establish his risk of nonappearance.

The Defendant's argument that this Court should consider only the conduct that has been charged in the pending indictment is without merit. In assessing whether a Defendant poses a danger, however, the Court is not limited to the charged offenses. *See*, *e.g.*, *United States v. Bilbrough*, 452 F. Supp. 3d 264, 268 (D. Md. 2020) (noting, in assessing facts relevant to detention, that "[e]ven though some of these facts are not directly related to the charged offenses, the Court may consider them"); *United States v. Rivera-Sepulveda* (D.P.R. Jan. 24, 2020) ("The Court may consider uncharged conduct in assessing the degree of danger posed by the defendant's release."); *United States v. Lee*, 206 F. Supp. 3d 103, 114 (D.D.C. 2016) (explaining that the court may consider evidence of defendant's danger, even if unrelated to the charged offense); *United States v. Bruno*, 89 F. Supp. 3d 425, 430 (E.D.N.Y. 2015) ("[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."). Here, the Defendant's repeated drug distribution should be considered and establishes his dangerousness.

In addition, the decision to charge the Defendant while he was in immigration custody does not suggest that this offense is not significant, as the Defendant suggests. The Defendant was previously in immigration custody and, prior to that, detained on pending state charges. Accordingly, he was not in a position to pose a danger to the public, as he would be if released. That he was previously in custody—and not on the street—supports, rather than diminishes, a finding of dangerousness and risk of flight.

In sum, a consideration of the § 3142(g) factors should lead to the conclusion that there is no condition or combination of conditions that will reasonably assure the safety of the community or the Defendant's appearance as required if the Defendant were released.

**III.    The COVID-19 Outbreak Does Not Support the Defendant's Temporary Release**

To the extent that the Defendant also invokes the temporary release provisions of 18 U.S.C. § 3142(i), "[t]he defendant bears the burden of establishing circumstances warranting temporary release." *United States v. Lee*, 2020 WL 1974881, * 4 (D. Md. Apr. 24, 2020).

As noted above, "[t]he question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, 457 F.Supp.3d 469, 472 (D. Md. 2020). Relevant factors for consideration in this context include: (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that a defendant's release would increase the COVID-19 risks to others." *Gallagher*, 2020 WL 2614819, at *6 (citing *United States v. Clark*, 448 F.Supp.3d 1152, 2020 WL 1446895, at *3 (D. Kan. 2020)). In this case, the risk to the Defendant do not.

The Defendant is not currently positive for COVID-19. According to the Defendant's motion, he had COVID-19 during his previous detention, not in CDF. The Defendant's supplemental memorandum states that his medical records confirm that the Defendant "reports bronchitis symptoms since he was hospitalized from COVID-19." It does not affix the records, nor does provide details regarding the severity of these symptoms or their relationship with the COVID-19 diagnosis.[4] Particularly in light of the Defendant's prior recovery from COVID-19, these health risks do not outweigh the factors supporting detention. *Cf. United States v. Shamire Moore*, Case No. PWG-19-545 (Coulson, M.J.), ECF No. 46 (May 5, 2020) (detention order based in part on finding that because some level of immunity is concerned, although there is not scientific consensus on the amount and length of immunity, health risks for inmate who had recovered from COVID-19 did not outweigh § 3142(g) factors during outbreak at CTF facility). Moreover, the motion does not show that these symptoms pose a greater risk to the Defendant—who had and recovered from COVID-19—because of his detention at CDF. If released, due to the immigration detainer, it is likely the Defendant would go into immigration custody, another detention situation in which he previously contracted COVID-19.

Furthermore, while the COVID outbreak at CDF is undoubtedly serious, the facility has put in place measures and resources allowing it to substantially limit the spread of COVID in the facility. As described above, an epidemiologist is coordinating the response to the outbreak in the facility. At the present time, there are three COVID-19 inmates. In addition, were the Defendant to become ill, CDF has resources in place to address the Defendant's medical needs. Between the

---

[4] On the afternoon of March 18, 2021, the Government requested from defense counsel a copy of the medical records received pursuant to the order issued by this Court. At the present time, the Government has not received a response, and given the nature of the pending motion, the Government did not want to delay filing this response.

11

medical professionals at CDF and the ability to transfer the Defendant to outside facilities if needed, the Defendant has access to appropriate care. *See United States v. Jones*, ELH-19-280, 2020 WL 3128966, at * 4 (D. Md. June 20, 2020) (finding that at CDF "there are multiple points of access for detainees with chronic diseases to seek medical care, whether for routine or emergency needs, including on-site dispensaries, infirmaries, and clinics that provide acute and chronic treatment for these types of illnesses").

In short, the Defendant has failed to meet his burden of showing that the threat to his health outweighs the danger to the community that would be posed by his release. Under the § 3142(g) factors, the Defendant presents a danger to the community and risk of nonappearance, and the risks of COVID-19 do not outweigh these considerations.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion for review of order of detention.

Respectfully submitted,

Jonathan F. Lenzner
United States Attorney

/s/
Jessica C. Collins
Assistant United States Attorney